# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Razor Capital, LLC, a Minnesota Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>HP Debt Exchange, LLC, a Texas Limited Liability Company,<br><br>Defendant. | Civil No. 13-272 (MJD/AJB)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS** |

Jeffrey S. Torosian and Paul A. Del Aguila, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, IL 60601 and Douglas B. Altman, Altman & Izek, 140 Bassett Creek Business Center, 901 North Third Street, Minneapolis, MN 55401, for Plaintiff.

Patrick C. Burns and Carl G. Peterson, Patrick Burns & Associates, 8401 Wayzata Boulevard, Suite 300, Minneapolis, MN 55426, for Defendant.

This matter is before the Court, United States Chief Magistrate Judge Arthur J. Boylan, on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Docket No. 13.) The matter has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.1(b). A hearing was held on the motion on May 2, 2013 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota. Jeffrey Torosian and Douglas Altman appeared on behalf of Plaintiff. Patrick Burns and Carl Peterson appeared on behalf of Defendant.

Defendant moves to dismiss this action based on a lack of personal jurisdiction. For the reasons discussed below, the Court recommends that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be denied because the Court has specific jurisdiction over Defendant.

## BACKGROUND

### I. PARTIES

Plaintiff Razor Capital, LLC is a Minnesota limited liability company with its principal place of business in Bloomington, Minnesota. (Compl. ¶ 4; Docket No. 23, Declaration of Chris Winkler ("Winkler Dec.") ¶ 4.)

Defendant HP Debt is a Texas limited liability company with its principal place of business in Plano, Texas. (Compl. ¶ 6; Docket No. 16, Declaration of Nate Johnson ("Johnson Dec.") ¶¶ 3-4.)

### II. PARTIES' AGREEMENT AND PLAINTIFF'S CLAIM

In September 2012, Plaintiff and Defendant entered into a Mortgage Loan Sale Agreement (the "Agreement"), under which Plaintiff purchased from Defendant 305 mortgage loans owned by Defendant (the "Mortgage Loans"). (Compl. ¶¶ 1, 12; Winkler Dec. ¶ 15.)

On September 19, 2012, Credit Max Finance, LLC ("Credit Max"), the entity that financed Defendant's purchase of the Mortgage Loans, contacted Plaintiff and inquired into Plaintiff's interest in purchasing the Mortgage Loans. (Winkler Dec. ¶ 6.) Over the course of several days, Plaintiff and Credit Max negotiated the terms and conditions of the proposed transaction. (*Id.* at ¶ 7, Ex. 1.) Defendant drafted the initial draft of the agreement between the parties. (*Id.* at ¶ 9, Ex. 2.) Plaintiff proposed revisions to the agreement, including a provision that Minnesota law would govern any dispute relating to the Agreement. (*Id.* at ¶ 11.) Defendant accepted Plaintiff's proposed changes. (*Id.* at Ex. 2.)

On September 24, 2012 Plaintiff and Defendant entered into the Agreement, pursuant to which Plaintiff agreed to pay Defendant $729,862.22 for the Mortgage Loans, which Defendant represented had an unpaid principal balance of $18,338,246.74. (Compl. ¶ 12; Winkler Dec.

¶ 15, Ex. 5.) Defendant executed the Agreement on September 21, 2012 in Texas. (Johnson Dec. ¶ 17.) Defendant also executed a Bill of Sale, conveying its rights and interests in the Mortgage Loans to Razor. (*See* Winkler Dec. ¶¶ 13-14.) Both documents were sent to Plaintiff in Minnesota. (*Id.*) Plaintiff executed the Agreement on September 24, 2012 in Minnesota. (*Id.* at ¶ 15.) The Agreement contains a Minnesota choice of law provision. (*Id.* at Ex. 5.) The Agreement provides Plaintiff's address in Bloomington, Minnesota for receipt of notices sent under the Agreement. (*Id.*)

On October 31, 2012, Defendant sent Plaintiff an e-mail in which Defendant disclosed that the majority of the Mortgage Loans were subject to settlement arrangements or short payoffs which substantially reduced the unpaid principal balance of the Mortgage Loans from $18,338,246.74 to $2,325,337.01. (Compl. ¶ 23.) Thereafter, Plaintiff gave Defendant notice of Defendant's breaches of representations, warranties, and covenants Defendant made in the Agreement and demanded that Defendant repurchase the Mortgage Loans from Plaintiff for the purchase price paid by Plaintiff, plus costs and expenses. (*Id.* at ¶¶ 24-25.) Defendant refused to repurchase the Mortgage Loans. (*Id.* at ¶ 26.)

Plaintiff sued Defendant for breach of contract, alleging that Defendant breached the representations, warranties, and covenants it made in the Agreement. (Compl. ¶¶28-36.)

### III. DEFENDANT'S CONTACTS WITH MINNESOTA

Defendant asserts that it had no contacts with Minnesota and that during the negotiations of the contract at issue, it communicated through a broker (Credit Max) located in Florida. Defendant asserts that the only communication it had with Plaintiff was the October 31, 2012 e-mail. Defendant argues that the contacts its broker Credit Max had with Minnesota cannot be imputed to Defendant because Credit Max was not acting as Defendant's agent.

3

Plaintiff points to the contacts it had with Credit Max in negotiating the Agreement and asserts that Credit Max was acting on Defendant's behalf as Defendant's agent and therefore Credit Max's contacts with Minnesota constitute Defendant's contacts with Minnesota. (*See* Winkler Dec. ¶¶ 6-8.) For example, Credit Max solicited Plaintiff and had numerous communications with Plaintiff negotiating the terms and conditions of the proposed transaction. (Winkler Dec. ¶¶ 6-7.).

Plaintiff also points to numerous contacts it had with Defendant as a result of entering into the Agreement. After executing the Agreement, Plaintiff wired the purchase price from its Minnesota bank account to Defendant. (Winkler Dec. ¶ 17.) Within weeks of executing the Agreement, Defendant delivered documents relating the Mortgage Loans, including underlying loan documents, notices, and chain of title documentation, or caused such documentation to be delivered, to Plaintiff's principal place of business in Minnesota. (*Id.* at ¶ 18.) Defendant has also sent numerous payments required under the Agreement to Plaintiff in Minnesota via regular mail. (*Id.* at ¶ 20.) Defendant remitted two checks, via regular mail, to Plaintiff, for payments made by the obligors on the underlying loans following the sale of the Mortgage Loans to Plaintiff. (Winkler Dec. ¶ 20, Ex. 7.) Defendant also periodically sent to Plaintiff checks made by the underlying obligors and endorsed by Defendant. (Winkler Dec. ¶ 20, Ex. 8.) After executing the Agreement, Plaintiff's and Defendant's employees exchanged numerous e-mail communications relating to the performance of the Agreement. (Winkler Dec. ¶¶ 22-24, Exs. 9, 11.) In addition, at least four of the loans subject to the Agreement involve Minnesota residents or property. (Winkler Dec. ¶ 21.)

# DISCUSSION

I.   **STANDARD OF REVIEW**

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of setting forth a prima facie case of personal jurisdiction over the defendant. *Bankfirst v. Ginsburg*, No. 08-5897, 2009 WL 465047, at *3 (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). The Court must view all the facts alleged in the complaint and corresponding affidavits in the light most favorable to the plaintiff and all factual conflicts must be resolved in Plaintiff's favor. *Janel Russell Designs, Inc. v. Mendelson & Assocs. Inc.*, 114 F. Supp. 2d 856, 861 (D. Minn. 2000) (citing *Digi-Tel Holdings, Inc.*, 89 F.3d at 522). The Court may exercise jurisdiction over Defendant if (1) jurisdiction is permissible under Minnesota Statute § 543.19 (Minnesota's long-arm statute); and (2) jurisdiction is compatible with the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. *Digi-Tel Holdings, Inc.*, 89 F.3d at 522. Because Minnesota Statute § 543.19 extends Minnesota courts' jurisdiction over non-residents "to the maximum limit consistent with due process," the Court must only determine whether the federal due process standards are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process standards are satisfied where a defendant has "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In this respect, the Court should consider "whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state, and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir.

2003) (internal citation omitted).

Eighth Circuit courts apply a five-factor test to determine whether a non-resident defendant has met the minimum contacts requirement: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Id.* at 562 (citing *Digi-Tel Holdings, Inc.*, 89 F.3d at 522-23). The first three factors are "of primary importance" and the Court may consider them together. *Id.*; *Digi-Tel Holdings, Inc.*, 89 F.3d at 523.

## II. ANALYSIS

### A. Nature, Quality, and Quantity of Contacts

When looking to the nature and quality of contacts, the central question is "whether the defendant had fair warning of being sued in Minnesota. The defendant had fair warning if it purposefully directed its activities at residents of this state." *W. Publ'g Corp. v. Stanley*, Civ. No. 03-5832, 2004 WL 73590, at *5 (D. Minn. Jan. 7, 2004) (internal quotations omitted). The quantity of contacts is relevant but not necessarily determinative where specific jurisdiction has been alleged. *See id.* at *4; *Marine Innovations Warranty Corp. v. Am. Marine Holdings, Inc.*, Civ. No. 03-4646, 2004 WL 234398, at *3 (D. Minn. Feb. 4, 2004). Here, the quantity of contacts is not extensive, so the nature and quality of the contacts becomes dispositive. *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F. Supp. 2d 1033,1041 (D. Minn. March 28, 2001) (internal citations omitted). In considering whether to exercise personal jurisdiction over a defendant in a breach of contract action, the court should "consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Edmonton World Hockey Enters. v. Abrahams*, 658 F. Supp. 604, 607 (D. Minn. 1987) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendant argues that Credit Max was not its agent and therefore Credit Max's actions in soliciting Plaintiff to purchase the Mortgage Loans from Defendant and negotiating with Plaintiff may not be considered in assessing personal jurisdiction. Plaintiff argues that Credit Max was not a party to the Agreement and therefore necessarily was acting on Defendant's behalf as either an agent or intermediary. Plaintiff asserts that throughout its dealings with Credit Max, it understood it was negotiating with Defendant through Credit Max as Defendant's agent. (Winkler Dec. ¶ 8.) The facts asserted to demonstrate specific jurisdiction are assessed in the light most favorable to Plaintiff and factual conflicts are resolved in Plaintiff's favor. *See St. Paul Fire and Marine Ins. v. Courtney Enterprises, Inc.*, 108 F. Supp. 2d 1057, 1060 (D. Minn. 2000) (internal citation omitted). Here, viewing the facts in the light most favorable to Plaintiff, it appears that Credit Max was authorized to act on Defendant's behalf in soliciting Plaintiff and negotiating with Plaintiff to sell the Mortgage Loans owned by Defendant. However, notwithstanding whether Credit Max was acting as Defendant's agent, the Court finds Defendant's other contacts with Minnesota sufficient to confer personal jurisdiction.

Defendant entered into a contract with a Minnesota resident. Although Defendant argues that it was Credit Max and not Defendant who solicited Plaintiff, it was Defendant who drafted the initial contract and negotiated with Plaintiff regarding its terms. (Winkler Dep. ¶ 10, Ex. 2.) *See St. Paul Fire and Marine Ins.*, 108 F. Supp. 2d at 1061 (defendant "purposefully availed itself of the benefits and protections of Minnesota's laws" when it negotiated a contract with a Minnesota plaintiff, even though defendant was never physically present in Minnesota). After Defendant executed the Agreement, the Agreement was sent to Plaintiff in Minnesota to execute the Agreement in Minnesota. *See K-Tel Int'l, Inc.*, 169 F. Supp. 2d at 1041 (defendant's act of

signing contract and sending it to plaintiff in Minnesota may be sufficient to confer personal jurisdiction); *Edmonton World Hockey Enters*, 658 F. Supp. at 607 (defendant's sending of agreement's signature page to Minnesota was contact for purposes of determining whether personal jurisdiction exists on claim relating to the agreement). Defendant also executed a Bill of Sale which was sent to Plaintiff in Minnesota. Although entering into a contract with a forum resident alone may not be sufficient to confer jurisdiction, it is a contact that weighs in favor of exercising jurisdiction, particularly where, as here, the litigation involves the Agreement. *See St. Paul Fire and Marine Ins.*, 108 F. Supp. 2d at 1061. Further, more than merely entering into a contract occurred here. *See Minnesota Mining and Mfg. Co. v. Nippon Carbide Industries, Co., Inc.*, 63 F.3d 694, 698 (8th Cir. 1995). "'Even a single act can support jurisdiction,' so long as it creates a substantial connection with the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 n. 18 (1985)); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

The Agreement contemplated future actions and ongoing duties by both parties which resulted in Defendant's contacts with Minnesota. Through its performance under the Agreement, Defendant had multiple contacts with Minnesota. The Agreement required Defendant to deliver documentation to Plaintiff in Minnesota and remit payments made by the underlying obligors to Plaintiff. *See Bankfirst v. Ginsburg*, No. 08-5897, 2009 WL 465047, at *6 (D. Minn. Feb. 24, 2009) (considering defendant's contacts resulting from performance under contract, including defendant's sending of documents to Minnesota, in assessing personal jurisdiction). Defendant communicated with Plaintiff in Minnesota regarding its obligations under the Agreement and Defendant made payments directly to Plaintiff in Minnesota. *See id.* (noting that defendant communicated with plaintiff and made payments to plaintiff in Minnesota as a result of entering into contract). Defendant and Plaintiff did not just have one communication as Defendant

originally asserted, but had numerous communications over the course of several months regarding the parties' duties and obligations under the Agreement. Defendant also received a wire transfer from Plaintiff's Minneapolis bank. *See K-Tel Int'l, Inc.*, 169 F. Supp. 2d at 1041 (noting defendant's receipt of wire transfer payments from plaintiff in Minnesota in assessing personal jurisdiction).

Defendant argues that these contacts with Minnesota are insufficient to confer personal jurisdiction because Defendant never visited Minnesota. However, that Defendant did not visit the state "is of no significant consequence when the defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Trident Enterprises, Int'l v. Kemp & George, Inc.* 502 N.W.2d 411, 415 (Minn. App. Ct. 1993) (defendant who conducted one transaction with Minnesota resident entirely by phone, mail, and facsimile had sufficient minimum contacts to confer personal jurisdiction); *see also Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn. 1978); *Advanced Duplication Servs., LLC v. Payne*, 2006 WL 696478 at *3-4 (Minn. App. Ct. March 21, 2006).

Defendant further agreed to a choice of law provision specifying the application of Minnesota law. *See Bankfirst*, 2009 WL 465047 at *6 (considering choice of law provision in assessing nature and quality of contacts). The Agreement provides that "[t]his Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Minnesota without reference to the choice of law principles thereof." (Winkler Dec. Ex. 5.) Although a choice of law provision alone is insufficient to create jurisdiction, it "is a heavily weighed factor in deciding whether [a defendant] purposefully invoked the benefits and protections of Minnesota's laws." *St. Paul Fire and Marine Ins.*, 108 F. Supp. 2d at 1061. "[S]uch a provision

9

can be considered insofar as it 'reinforces defendant's deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" *Edmonton World Hockey Enters.*, 658 F. Supp. At 607 n. 1 (quoting *Burger King Corp.*, 471 U.S. at 482). Defendant's acceptance of the choice of law provision demonstrates Defendant's deliberate affiliation with Minnesota such that it could reasonably anticipate being haled into court here regarding the Agreement.

The nature and quality of Defendant's contacts demonstrate that it had fair warning of being sued in Minnesota. These factors weigh in favor of personal jurisdiction over Defendant.

### B. Relation of Cause of Action to Contacts

"Personal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor – relation of the cause of action to the contacts – distinguishes between the two." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose." *Digi-Tel Holdings, Inc.*, 89 F.3d at 523 n.4.

Here, Defendant's contacts with Minnesota have a direct connection to Plaintiff's breach of contract claim. All of Defendant's contacts with Minnesota were related to the Agreement and the performance required pursuant the Agreement. According to Plaintiff's allegations, Defendant's non-performance of its repurchase obligations under the Agreement triggered the litigation. This factor weighs in favor of personal jurisdiction over Defendant.

### C. Interest of Forum State and Convenience of Parties

Minnesota has a strong interest in providing a forum for its citizens. *See Multi-Tech Sys., Inc. v. VocalTec Commc'ns, Inc.*, 122 F. Supp. 2d 1046, 1052 (D. Minn. 2000). This factor

weighs in favor of jurisdiction.

As to convenience of the parties, Defendant argues that Minnesota is not a convenient forum for it. However, Minnesota is a convenient forum for Plaintiff and Plaintiff has a strong interest in litigating here. Defendant asserts that not all of Plaintiff's members are located in Minnesota, but Plaintiff has stated that all of its relevant employees and records are located in Minnesota. Plaintiff further asserts that all records regarding the Mortgage Loans and payments made thereunder are located in Minnesota. A plaintiff normally is entitled to select the forum in which it will litigate. *Advanced Duplication Servs., LLC*, 2006 WL 696478 at *5. Accordingly, convenience of the parties weighs slightly in favor of jurisdiction.

## **CONCLUSION**

In sum, considering the five-factor jurisdiction test and viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has established the existence of specific jurisdiction over Defendant. Defendant's contacts with Minnesota rise above the level of "minimum contacts" necessary for this court to find personal jurisdiction. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Defendant's conduct and contact with Minnesota are such that it should "reasonably anticipate being haled into court there." *See World-Side Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (Docket No. 13) be **DENIED**.

Dated: July 10, 2013　　　　　　　　　　　　s/ Arthur J. Boylan
　　　　　　　　　　　　　　　　　　　　　Chief Magistrate Judge Arthur J. Boylan
　　　　　　　　　　　　　　　　　　　　　United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before  July 24        , 2013.